THE BOLIVIA.[1]

DEEHAN v. THE BOLIVIA.

(District Court, S. D. New York. December 18, 1893.)

NEGLIGENCE—PERSONAL INJURIES—FELLOW SERVANT—WINCHMAN'S ERROR.
    Where cargo was being loaded into a hatch of a steamship by means of three whips, and certain boxes fell from one of the loads upon libelant, who was working in the hold, not by reason of the improper use of three whips in one hatch, whereby two of the loads interfered, as the libelant claimed, but, as the evidence showed, because the winchman prematurely let go of the brake of the winch, it was *held* that libelant could not recover, as the injury was occasioned by the negligence of a fellow servant.

In Admiralty. Libel for personal injuries. Dismissed.

S. B. Johnson and Joseph Fettretch, for libelant.
Wing, Shoudy & Putnam, for claimant.

BROWN, District Judge. At about 11 o'clock in the forenoon of March 3, 1893, the libelant, while at work in the lower hold of the steamship Bolivia, lying at the foot of East Twenty-Sixth street, and engaged in loading barrels of resin, was seriously injured by the fall of several boxes of logwood, which were at the same time being loaded, through the same hatch, upon the orlop deck, next above the hold. He was struck in the back by one or more of the boxes, and the spine so injured that the lower part of his body became paralyzed.

For the libelant it is contended, that the accident arose in consequence of the improper use of three falls or whips in the same hatch, so that the load of boxes collided with the draft of resin barrels which were descending at the same time, a little below the former; whereby some of the boxes on top were knocked off, and fell upon the libelant.

For the claimant it is contended, that the use of three whips at the same time is justifiable, being a frequent practice, where there

---

[1] Reported by E. G. Benedict, Esq., of the New York bar.

is need of haste in loading; that the accident did not arise from the use of three whips, and that there was no collision between the two drafts; that the fall of the boxes of logwood was caused by the inattention or mistake of the man at the winch, who controlled the descent of the boxes of logwood, and that the latter were allowed to strike too suddenly and too heavily upon the platform on the orlop deck, where they were landed; and that the sudden blow knocked off the upper boxes, and thus caused the accident.

The case of the libelant has been most carefully and thoroughly presented by his counsel, and I have given it the careful consideration which the painful consequences of this accident demand. I am constrained, however, to find that the great weight of testimony, as well as the probabilities of the case from the circumstances detailed, sustain, substantially, the account given by the claimant, viz.: That there was no collision between the two loads; and that the fall of the boxes arose through the fault or error of the winchman, a fellow servant of the libelant, and not in consequence of the use of three whips in the same hatch.

Two of the whips or falls were used for lowering the barrels of resin into the hold; the third whip was for lowering the boxes of logwood to the orlop deck. Both were lowered by the use of a sling or loop of rope, which was passed beneath and around the load of barrels or boxes, and hung at the top in the hook of the fall. There were about eight men employed in receiving and disposing of the barrels to each of the two whips lowering into the hold. The libelant was in the gang working on the port side, and it was his duty to aid in the landing of the loads on that side, to detach the hook from the sling, and while the other men were rolling the barrels away from the sling beneath them, to take the spare free sling from the preceding load, fold it up and hang it upon the hook, which was then drawn up for another load. The libelant testified he was making up the loose sling when he was hit; and that he heard no call to stand from under, which some of the other witnesses testify was heard when the boxes fell.

There is but one witness who, in behalf of the libelant, testifies to any collision of the two drafts. He says that this occurred a little before the draft of logwood boxes had reached the orlop deck, which, coming down more rapidly than the barrels of resin below them, struck the latter. Numerous witnesses for the claimant, however, show beyond doubt, as it seems to me, that at the time when the boxes fell, the draft of resin in the hatch had already reached the bottom of the hold. The head of the gang testifies that he was the person nearest to the libelant when he was knocked down; that he was rolling away one of the barrels of that draft; heard the shout to stand from under; jumped aside; then turned and saw the libelant knocked down; and that the spare sling was then hanging in the hook. The other resin whip was not at that time in the hatch, but over the side of the ship and in the lighter for another load of barrels. These two main facts, that at the time when the boxes fell one of the resin whips was over the side of the ship, and the other in the bottom of the hold with the draft partly

unloaded, is established by so much testimony, as against the single witness for the libelant, that it is impossible for me to find the libelant's theory on that point sustained, viz. that the fall of the boxes was occasioned through any collision with the descending load of barrels; since any such collision must have occurred before the resin barrels reached the bottom of the hold.

The testimony of the winchman who attended on the boxes of logwood, furnishes a simple explanation of the accident. The descent of the load was regulated by a brake, managed by the foot. He says that when the draft of logwood boxes was part way down, he felt it ease, as though it had touched; and that he let his foot slip from the brake, when the draft immediately ran away from him, with five or six more turns of the axle, equivalent to about fifteen or eighteen feet. The gangman who was attending that whip also says that load went down too fast. Of the latter there is no doubt. It is not entirely certain from the testimony of the winchman, whether this was through an unintentional slip of the foot, or from his voluntarily easing it, at the moment when he says he thought the load had touched the deck. If the latter is correct, the winchman's mistake might easily be accounted for by the momentary catching of the load on the deck above, there being two decks above the orlop deck, where the logwood was landed. The load was landed upon the platform on the hatch of the orlop deck, where it belonged. It was landed too suddenly, whatever the cause, so that several of the boxes bounded off, and fell into the hold. The too sudden descent plainly arose from the mistake or fault of the winchman. As he was a fellow workman with the libelant, his errors were one of the risks of the libelant's employment. Quinn v. Lighterage Co., 23 Fed. 363; Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397; The Queen, 40 Fed. 694, 696.

Deplorable as the results were to the libelant, the law does not afford him any redress, in the absence of any proof of fault in the owners or agents of the ship.

Without considering, therefore, the other matters which have been so ably presented by counsel, I am constrained to dismiss the libel; but without costs.