## THE RAVENSDALE.

### ANDERSON v. THE RAVENSDALE et al.

(District Court, S. D. New York. March 2, 1894.)

SHIPPING—PERSONAL INJURY—HOISTING CARGO—NEGLIGENCE—FELLOW SERV-ANTS.
. Where the libelant, a longshoreman, was injured by the fall of a draft of boards which were being hoisted aboard a steamer, and the evidence showed that the cause of the accident was the improper fastening of the draft, so that the draft did not tauten as it should have done when the draft went up, *held*, that it was immaterial by whose fault this oc-curred, since it was certainly done by one of the several workmen en-gaged in the same common employment, which would prevent any re-covery by the libelant.

This was a libel to recover damages for personal injuries, filed by Saverin A. Anderson against the steamer Ravensdale and Roberts Bros., stevedores, who were loading said steamer.

Hyland & Zabriskie, for libelant.
Convers & Kirlin, for the Ravensdale.
Charles C. Nadal, for Roberts Bros.

BROWN, District Judge. On the 16th of February, 1891, while the lighter Georgia Pine was lying alongside the steamer Ravens-dale, at the Atlantic basin, and delivering a cargo of boards to the steamer, the libelant, who was captain of the lighter, and was assisting a gang of men employed by Roberts Bros., stevedores, in hoisting the boards upon the steamer, was severely injured by the fall of a part of one of the drafts, just before it was hauled over the steamer's rail. One of the vertibrae of his back was dislocated, causing incurable paralysis of both the lower limbs. The above

libel was filed to recover for the damages against the Ravensdale, and the stevedores who were loading her.

The boards were hauled up in drafts of 25 or 30 boards. There is contradiction whether these were secured by a sling, passed around them with a double turn, or whether the fall rope itself was run twice round and then hooked to the same rope, without a sling. This fall ran to a block attached to a boom rigged to the steamer's mast, and from thence was operated by a winch on board the steamer. The boom was designed to swing out when the draft was to be taken up, so as to keep the draft free from contact with the side of the ship, and to swing in as soon as the draft was above the rail. The top of the steamer's rail was from 10 to 15 feet above the load of boards on the deck of the lighter. The boards were from 12 to 14 feet long, and were fastened by the rope or sling at about two-thirds of the length towards the upper end of the draft.

The libelant contends that the draft by which he was injured, as well as others before it, caught against the projecting parts of the steamer's side, or against the projection of the rail, which was from one to two inches; that this liability ought to have been guarded against by the use of a skid; and that the catching of the upper end of the draft loosened the hold of the rope around it, and caused the boards to fall.

The defendants contend that there was no projection on the ship's side, save the slight projection of the rail, which was rounded; that the ship had skids, but that they were not used, because it was not customary or necessary to use them with a smooth, iron-sided ship like the Ravensdale, but only with wooden ships, to protect the vessel's side; that this draft did not catch at all, and that the boards fell, because the sling, after being passed around the draft by the libelant himself, was improperly run through a loop made at the thick, stiff splice of the sling, instead of away from the splice, whereby the natural and proper tightening of the sling around the draft as it was hoisted up was prevented; and that the libelant was previously remonstrated with for making the loop of the sling at that splice. The libelant testified that no sling was used, and that, so far as he remembered, he had nothing to do with adjusting the rope around the boards.

Deeply as I sympathize with the libelant in the helpless condition in which this accident has plunged him, I cannot find that he is entitled to a decree against either of the defendants, without doing violence to the canons of legal decision. Except in the single particular as to whether the libelant himself adjusted the rope or sling, in which his young son sustains him, the libelant is not corroborated in his material statements by any other witness, but is contradicted by them all. Practically, his case rests wholly upon his own testimony. While this is not absolutely insurmountable as against five witnesses who contradict him in every material particular, it is at least necessary to his success that his account should be sustained by circumstances, and appear to be, on the whole, the more credible of the two accounts of the accident; and

such corroboration is here wanting. Had the fall rope broken in the ascent, such a circumstance would have been a strong corroboration of the witness' testimony that the draft caught; but here nothing broke. Had the upper end of the draft caught in going up, as the libelant avers it did, that would naturally have tightened the hold of the rope, as all the witnesses testify. But the libelant himself says that he watched the draft until the lower end of it was within about 2 feet of the top of the rail; so that at that time the upper end of the draft must have been hoisted up 10 or 12 feet above the highest place where it could have caught; and at that time, as the libelant testifies, he saw nothing out of order in the draft, but "it appeared all right;" and then he turned around to take up some other boards. Had the top of the draft caught against the rail, the highest possible point, and thereby caused the rope to become loosened, the lower end of the draft must have been at that time upon the deck of the lighter, or very near to it; and the effect of the loosening must have been visible when the upper end was swung off; yet nothing like this was seen then, or while the draft went some 10 or 12 feet higher up; and the loosening and sliding back of the boards would, moreover, have occurred when the lower end of the draft was on or near the lighter's deck, and where the slipping of the boards could not have produced this accident to the libelant. The libelant's testimony, therefore, does not, on the whole, make it probable that the absence of a skid caused the accident, or even contributed to it; while upon the defendant's testimony, it certainly did not.

The account given by the defendants, on the other hand, does furnish, apparently, a reasonable explanation as to how this happened, viz. through the insecure mode of fastening the draft, so that the rope did not tauten as it should have done when the draft went up. It is immaterial, as respects the libelant's right of recovery, by whose error or fault this happened, since it was certainly done by one of the several workmen engaged in the same common employment. The testimony is too strong against the libelant to permit a decree in his favor, and I am, therefore, constrained to dismiss the libel; but, under the circumstances, without costs.