## THE COLERIDGE.

### SAUNDERS v. THE COLERIDGE.

(District Court, E. D. New York. March 3, 1896.)

1. SHIPPING—MASTER AND SERVANT—NEGLIGENCE—ACCIDENT.

Injury to a workman engaged in repairing a tank on shipboard, by the falling of a carpenter's tool from a scaffold overhead, in consequence of some unexplained inadvertence on the part of the carpenter, is a simple accident, which involves the ship and her owners in no legal responsibility.

2. SAME—FELLOW SERVANTS.

Where one employed to do repair work on shipboard by day's labor sends his servant to do the work in his place, the servant is to be regarded as the fellow servant of the ship's carpenter, in respect to an injury to him resulting from alleged negligence of the carpenter.

This was a libel by Thomas F. Saunders against the steamship Coleridge to recover damages for personal injuries.

Charles J. Patterson and John F. Clark, for libelant.

Edward L. Owen and George H. Gilman, for claimant.

BROWN, District Judge. In the afternoon of the 1st of February, 1894, while the libelant was engaged in making some repairs upon the tank in the hold of the steamship Coleridge, his foot was cut by the fall of a chopper belonging to the carpenter, who was at work on the tank upon a platform or scaffold 22 inches wide, and about 6 feet above the bottom of the tank. The wound was a somewhat serious one, and disabled the libelant for work for several months.

The libelant did not belong to the ship, but was in the employ of Mr. White, a boiler maker, by whom he had been sent to make preparation for putting a patch upon the tank. The carpenter belonged to the ship, and he was employed in repairing the tank by fitting some wooden casings about the place of the patch. The testimony is contradictory between the libelant and Luce, the carpenter, as to whether the libelant was at the time actually engaged in doing his own work upon the tank, or whether he was doing nothing about that work, but assisting the carpenter from time to time in passing the boards up and down in the course of fitting. The libelant testifies that at the time he was hit he was cleaning lead out of some holes in the place where the patch was to go on.

There is no evidence showing any imperfection or fault on the part of the ship, her tackle, or equipment, nor any fault on the part of the owners in employing a suitable person as carpenter. Nor is any fault or defect found with the platform, either in its kind, or the arrangements for using it; nor is there any evidence showing how the chopper came to fall off the platform. It was an ordinary tool, belonging to the carpenter. He had used it, as he says, about five minutes before the accident, in chopping off a piece of one of the boards, and had laid it down upon the platform a few feet from him. In what manner or why it got off the platform and fell is not known. The first the carpenter knew of its fall was when the libelant said he was hurt. It fell, presumably,

in consequence of some unexplained inadvertence on the part of the carpenter, either in stepping about on the platform, or in handling the boards or other tools upon the platform. Inadvertence of that kind is an ordinary incident of such work, of which all workmen working on the same job, or working near each other, take the risk, as one of the risks of their vocation. Such cases are to be, moreover, regarded, I think, as simple accidents rather than as legal negligence, involving ship and owners in responsibility.

From what the carpenter testifies as to the position of the libelant when hurt, it would seem that the latter could not have been at work upon the holes, as he claims. For a part of the time certainly he was not occupied with his own separate work. From his previous work there, and his aid given to the carpenter, it is impossible also that he should not have known of the presence and use of the chopper and other tools, and of the liability of such tools to be knocked off the platform in the course of the work that was going on. And if the case were to be treated as one not of simple accident, but as involving presumed negligence, I think, in the entire absence of any specific proof how the chopper got off, there was presumptively as much negligence in the libelant in remaining unnecessarily where any fall of tools would be likely to hurt him. as can be imputed to the carpenter himself by mere presumption.

I further think, also, that if the case is to be considered as one of presumptive legal fault, the libelant must be deemed a fellow servant with the carpenter, and on that ground precluded from recovery. The authorities cited in his behalf are all cases in which the accident arose from some defect in the ship, or in her tackle, equipment, or loading, and where there was a breach of some implied duty owed by the owners. Here, as I have said, there is no actual fault of any kind attributable to the owners, unless they are to be legally held as warranting against any inadvertence on the part of the carpenter in the handling of his tools, or in his motions while at work. I do not think any such legal warranty exists. The two workmen were engaged upon the same common job,—the repair of the tank,—in the immediate view and presence of each other. The libelant at times voluntarily assisted the carpenter. The negligence, if there was any, on the part of the carpenter was in his personal carriage, or the handling of his tools, or of the boards. Had he himself inadvertently fallen from the platform and injured the libelant, could the latter have recovered from the ship? Accidents from such causes are, as I have said, a risk of the vocation.

The fact that the libelant was a servant of Mr. White does not change this aspect of the case; nor the fact that the carpenter may have been paid by the month, and Mr. White, or the libelant, by day's work. Both were substantially in the employ of the ship-owners, and subject to their control. The work was apparently done in the usual way, by day's work; no independent contract is indicated in the evidence. Had Mr. White, who was employed to do the libelant's part of the repair, done the work with his own hands, and been injured in this way, both would clearly have been

in the same common employment of the ship, and fellow servants. I do not see that the case is changed by the fact that Mr. White, instead of doing the work himself, sent the libelant as his servant to do the same work. The case in that respect is similar to the frequent cases of longshoremen employed by a stevedore, who are injured through some negligence of men furnished by the ship engaged in some part of the common employment. See Butler v. Townsend, 126 N. Y. 105, 112, 26 N. E. 1017; Quinn v. Lighterage Co., 23 Fed. 363; The Harold, 21 Fed. 428; The Servia, 44 Fed. 943; The Ravensdale, 63 Fed. 624; The Bolivia, 59 Fed. 626. These cases are not precisely parallel; but they involve the same principle, and the cases of Killea v. Faxon, 125 Mass. 485; Tube Co. v. Bedell, 96 Pa. St. 176; and Ewan v. Lippincott, 47 N. J. Law, 192,—seem to be indistinguishable.

The libel is dismissed, but without costs.