## THE ANACES.

(District Court, E. D. North Carolina. May 12, 1898.)

**1.** MARITIME LIENS—WHEN EXISTING—INJURY TO STEVEDORE.
A laborer employed by a stevedore who has contracted to load a vessel has no right to proceed in rem against the vessel for a personal injury received in the course of such employment, where there is no defect in the vessel's machinery, and no negligence on the part of her officers.

**2.** MASTER AND SERVANT—FELLOW SERVANTS—STEVEDORES.
A member of a stevedore's gang operating the engine used for hoisting cargo into a vessel is the fellow servant of a member of the same gang engaged in stowing the cargo in the vessel's hold, and the vessel is not liable for an injury to the latter resulting from negligence of the former.[1]

Iredell Mears and Bellamy & Bellamy, for libelant.
George Roundtree and Junius Davis, for the Anaces.

PURNELL, District Judge. Alexander McCullum filed his libel in rem against the British steamship Anaces, and, the cause being regularly called, the proctors for respondent moved to dismiss the libel —First, because the libel does not state facts sufficient to constitute a cause of action; and, second, because, this court having no jurisdiction to hear this libel in rem, no action in rem would lie. For the purposes of the motion, the allegations set forth in the libel must be taken as true. They are as follows:

[1] As to who are fellow servants, generally, see note to Railroad Co. v. Smith, 8 C. C. A. 668, and supplemental note to Railroad Co. v. Johnston, 9 C. C. A. 596.

Alexander McCullum, a laborer, of the city of Wilmington, state of North Carolina, brings this his libel against the British steamship Anaces, hailing from Fleetwood, England, whereof Charles S. Roberson is, or lately was, master, now lying in port at Wilmington, N. C., in the district aforesaid, her tackle, sails, apparel, furniture, boats, engines, boilers, and machinery, and other appurtenances, and all persons intervening for their interest in said vessel, in a cause of damage, civil and maritime; and the said libelant alleges and propounds as follows: First. Libelant is a resident of the state of North Carolina, and of the Eastern district of this honorable court, and is by occupation a laborer and stevedore. Second. The said steamship is, or was at the time of the facts herein set forth, lying in the port at Wilmington, at the wharves of the Wilmington Compress Company, and engaged in loading a cargo of cotton. Third. The said steamship, through its agents or captain, had contracted with one A. J. Walker, a contracting stevedore, to load the said steamship with cotton, and the said A. J. Walker employed your libelant as a laborer in the hold of the said ship, to assist and work in the receiving and stowing of the cotton as the same is hoisted from wharves and lowered into the hold of the ship; that, by and under the custom of the port, the terms of the contract of stevedoring, and the duties and obligations of the said ship, the said steamship furnishes and operates the dummy engine, tackle and ropes, and all apparatus necessary and customarily used in hoisting the cotton from the wharves into the ship; that the said dummy engine is a part of the equipment of the said ship, attached to her, as engines and boilers, and is operated by means of a winch or lever from the deck of the ship, and requires in the operation thereof a man of experience and familiarity with the work; that, while such loading is going on, men are in the hold of the ship, receiving the cotton as it is lowered, and unless the engineer, or man at the lever, operating the engine which is used in hoisting and lowering the cotton, is experienced, there is danger of injury to the men below, in carelessly lowering or letting into the hold bales of cotton; that it is the duty of the officers of the said ship to provide a man of care and experience in operating the said engine. Fourth. That on or about the 5th day of October, 1897, while your libelant, with others, was working in the hold of the said steamship, several bales of cotton were suddenly, carelessly, and negligently dropped into the hold of the said ship, through the careless operation of the dummy engine, falling against your libelant, jammed him against the side of the ship with tremendous force, and caused him a serious and perhaps permanent injury, breaking three of his ribs, utterly rendering him incapable for work for many months, if not for years to come, and causing him great physical injury and pain, and that he is now laid up, under the care of physicians, and by them advised of the serious injuries herewith complained of. Fifth. That the accident here complained of by your libelant was caused immediately and proximately by the gross negligence and incompetence of the man employed by the said officers of the said steamship to operate the said engine; that the said party operating the same at the time of the said accident was not a regular engineer or experienced person, but that the captain of the said ship, after having one of his own crew to operate the same, who was experienced, detailed the said person to other work, and substituted a man not connected with the said ship, and not one of its crew, whose name is unknown to your libelant, who was nothing more than an ordinary laborer, and utterly inexperienced in the work of handling such an engine, in hoisting and loading such cargo, which requires experienced judgment in order to avoid such accidents as this one here complained of. Sixth. That the master or officials of the said ship, in employing an inexperienced man to operate the lever or winch of said dummy engine, were guilty of gross carelessness, negligence, and want of care, and failed to perform or exercise a proper care and prudence, as in duty bound to do, to your libelant, who was engaged in work in the hold below, and that for such act of negligence, done in their official capacity, said steamship is liable for the injuries inflicted upon libelant as aforesaid in consequence thereof. Seventh. That by reason of the said accident here complained of, that the plaintiff has suffered physical pain, mental anguish, and impairment of strength and ability as a laborer, and has been damaged thereby in the sum of two thousand five

hundred dollars. Eighth. That the said accident was through no fault or carelessness, or contributory fault or carelessness, of your libelant. Ninth That, all and singular, the premises are true, and within the admiralty and maritime jurisdiction of the United States and this honorable court.

For the purposes of the motion, the answer, which traverses many of the allegations in the libel, must be disregarded, and the case considered as upon demurrer ore tenus.

Whether a stevedore's contract is maritime has been much discussed, often doubted, and the decisions are conflicting and confusing. In the case of The Gilbert Knapp (E. D. Wis. 1889) 37 Fed. 209, the conflicting decisions are considered by Jenkins, District Judge; and it is held that such contracts are maritime, within the principles of admiralty jurisdiction, but no lien on the vessel is allowed in admiralty for such services rendered in the home port. In the same year, and the same volume of the report, at page 367, in the case of The Magnolia, Pardee, Circuit Judge, in an appeal from the district court for the Eastern district of Louisiana, held that a contract to stow and load a vessel is not a maritime contract, and not enforceable in admiralty. This decision is based upon the decision of Justice Bradley in the case of The Ilex, 2 Woods, 229, Fed. Cas. No. 10,842. But in The Main (1892) 2 C. C. A. 569, 51 Fed. 954, in the circuit court for the Fifth circuit (Pardee, Circuit Judge, delivering the opinion), it is held that a stevedore rendering services in loading and unloading cargoes in other than the home port has a maritime lien therefor. The case of The Ilex is overruled. This principle is recognized in this district in the case of The William Branfoot, 8 U. S. App. 129, 3 C. C. A. 155, and 52 Fed. 390, and in The Elton, 83 Fed. 519. The stevedore's contract is, under the authorities cited, maritime, and within the admiralty jurisdiction; and, if the injury had resulted from a defect in the machinery of the vessel, there could be no doubt, under these authorities, that defendant would have a lien, and be entitled to proceed in rem to enforce this lien. But how is it under the allegations of the libel? There is no complaint of defects in the machinery furnished by the ship, nor is there any complaint that the parties employed to operate the machinery of the ship were known by the master, the captain, or any other person authorized or empowered to bind the ship, to be negligent or incompeent; but, after having detailed one of the crew who was experienced, some one else, unknown even to the libelant, who was an ordinary laborer, and inexperienced in handling the winch, was temporarily operating the same; and this is alleged to be the proximate cause of the accident complained of, by which libelant was injured. There is no contention that libelant is not entitled to his remedy in personam, or that he has a remedy; but the contention is that the allegations are not sufficient, and a proceeding in rem will not lie for the causes set out in the libel. The admiralty rules, from 12 to 20, were intended, says Justice Brown in The Corsair, 145 U. S. 341, 12 Sup. Ct. 949, "to prescribe a remedy appropriate to each class of cases in admiralty: allowing in certain cases a joinder of ship and freight, or ship and master, or alternative actions against the ship, master, or owner alone. * * * These rules were adopted in pur-

suance of an act of congress of August 23, 1842 (5 Stat. 516),   *   *   *
and have always been regarded as having the force of law.   They are
little more than a recognition and formulation of the previous prac-
tice of courts of admiralty in this country and in England." But
they are always treated by the courts as obligatory.   In the case
cited (The Corsair) it was held that a proceeding in rem for injuries
causing death was properly dismissed, because, though by the local
law a right of action survives to the administrator, no lien is ex-
pressly created thereby.   Lord Campbell's act is discussed at length,
and it is held that a United States district court, sitting in admiralty,
cannot entertain a libel in rem for damages incurred for loss of life.
The local laws of North Carolina do not give a lien for injuries such
as those complained of in the case at bar.

  Maritime liens are stricti juris, and will not be extended by con-
struction.   The Yankee Blade, 19 How. 82.   The advocates of the
largest measure of admiralty jurisdiction admit that they have not
jurisdiction to enforce maritime contracts by proceedings in rem
unless the contract, expressly or by implication, creates a lien on
the ship.   The Draco, 2 Sumn. 180, Fed. Cas. No. 4,057.   From
whence, and how, did libelant acquire a lien, and a right to proceed
in rem?   Liens are created by the acts of the parties, or by opera-
tion of law.   Libelant had no contract with the master of the ship,
or any one representing the owner, but was employed by A. J. Walk-
er; and as a subcontractor he had no claim upon the ship, either for
his wages or for a tort, for Walker had no authority to bind the ship.
He must therefore look to the law, stricti juris, for his right to pro-
ceed in rem.   The statutes give a lien on the vessel for seamen's
wages, bottomry, and to passengers for the violation of the laws of
navigation, and for some other causes; but nowhere is it provided in
the statute law of the United States that there shall be a lien on
even a foreign vessel for accidents such as that of which libelant com-
plains.   Nor can it be found in the admiralty rules before quoted
(from 12 to 20), intended to prescribe a remedy appropriate for each
class of cases in admiralty.   Suits by material men (rule 12) may be
in rem or in personam.   Suits for mariners' wages (rule 13) may be
in rem against the ship or freight, or in personam.   Suits for pilotage
may be in rem or in personam.   Rule 14.   Suits for damage by col-
lision (rule 15) may be in rem or in personam, or both.   Suits for as-
sault and battery can be in personam only.   Rule 16.   Suits
for hypothecation (rule 17) may be in rem or in personam.   Suits on
bottomry bonds (rule 18) may be in rem under certain circumstances,
and in personam under others.   Suits for salvage (rule 19) may be in
rem against the property saved, or in personam against the party at
whose request and for whose benefit the salvage service was performed.
Suits between part owners, petitory or possessory suits (rule 20), may
be in rem and in personam.   So that the right to proceed in rem in an
action like that at bar is not conferred by the admiralty rules, and it
must be sought elsewhere, if, indeed, these courts derive any authority
as to proceedings in admiralty from any source save the statutes of the
United States and the rules in admiralty, which "have always been re-
garded as having the force of a statute,  *   *   *  and always treated by

the courts as obligatory." Liens have been given in rem by act of congress, as in sections 4270, 4493, Rev. St., which extend the lien in rem to passengers; but to "other persons" only an action in personam is given, under the latter section. These liens, too, are given for the violations of the navigation laws by passenger vessels, and there is no allegation that the Anaces was a passenger vessel. She was, in fact, a freight vessel,—a tramp. The burden is on the libelant to establish a maritime tort, a lien, and a right to proceed in rem. Bors v. Preston, 111 U. S. 255, 4 Sup. Ct. 675; Grace v. Insurance Co., 109 U. S. 283, 3 Sup. Ct. 207; Robertson v. Cease, 97 U. S. 646. Libelant's proctors have cited no authorities which are at all satisfactory on these points,—in fact, have furnished no authorities, but left the court to work out a conclusion. While it may seem to conflict with some of the decisions cited, and to be a novo impressio in this old branch of the law, I must conclude that the decision would have been different in the cases cited, and others on the same line, if the question now raised had been pressed in those cases, and that the courts would have held that a member of a stevedore's gang has no right to proceed in rem for a personal injury (especially where there is no defect in the ship's machinery, and no negligence on the part of the ship's officers) for an accident caused as described in the libel.

The above, being a new and interesting question, was considered first, though the other question raised by the motion is of equal importance. The negligence complained of was that of a fellow servant; and, in order to recover against the master for the negligent act of a fellow servant, the employé must allege that the fellow servant whose negligence caused the injury was incompetent, and that the master had knowledge of such incompetency, or by the exercise of reasonable care could have known of it. The winchman and libelant were fellow servants, and the vessel is not liable unless there was some negligent act or failure of duty on the part of the owner or his legal representative. Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397. The winchman was one of the crew, but the man at the winch at the time of the injury was a common laborer, like the libelant. If he was a fellow servant,—even the master himself, or one he had placed there,—the ship would not be liable. The Coleridge, 72 Fed. 676. The libelant could only recover against the vessel or the owner by alleging and proving (a) that the servant operating the winch was incompetent; (b) that such incompetency was known to the master, or by the exercise of reasonable care might have been known to him; (c) that the incompetence—not the occasional carelessness—of the servant directly contributed to, and was the proximate cause of, the accident. It is not sufficient to allege merely that an act was negligently done. There is no presumption of negligence, but the burden is on the libelant. Railroad Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707. For the foregoing reasons the motion of the defendant is allowed, and the libel herein dismissed. Dismissed.