THE ANACES.

(District Court, E. D. North Carolina.    October 7, 1899.)

MASTER AND SERVANT—EMPLOYING INCOMPETENT SERVANT—INJURY TO THIRD
PERSON.

Libelant, who was employed as a laborer by stevedores, and engaged with others in stowing cotton in the hold of a ship, was injured by the rolling against him of bales of cotton lowered by the winchman upon those lying ·under the hatchway. *Held*, that in the absence of evidence to sustain allegations of the incompetence of the winchman, or of gross negligence on his part, the ship could not be held liable for the injury.

In Admiralty.· Libel against the British steamship Anaces to recover for personal injuries received by libelant while employed by stevedores in loading the ship.

Iredell Meares, for libelant.

George Rountree, Junius Davis, and Thomas Evans, for defendant.

PURNELL, District Judge.    The former order in this cause dismissing the libel (87 Fed. 565) having been reversed (34 C. C. A. 558, 93 Fed. 240), the cause was heard at the regular term of the court at Wilmington; and the court, sitting in admiralty, after looking into the eyes of the witnesses, observing their demeanor on the stand and manner of giving in their testimony, and hearing them examined by proctors both for libelant and contra, finds the following facts from its recollection of such testimony, being aided therein by the stenographic report thereof and the admissions in the record.    There is much conflicting testimony, and the court therefore must exercise its prerogative of sifting the kernels of evidence from the chaff of testimony.

The following are the facts:    The British steamship Anaces was in the port at Wilmington, N. C., shipping a cargo of cotton at a compress wharf.    Alexander McCullom was a laborer employed by the stevedore engaged in loading said ship, and while so engaged was injured by cotton falling or rolling upon him and jamming him against the side of the ship.    For injuries thus received said Alexander McCullom files his libel in rem, alleging as the immediate and proximate cause of such injuries the gross negligence and incompetency of the man employed by the officers of the steamship to operate the lever winch of the dummy engine in hoisting and loading such cargo, the negligence and carelessness of the officers of the ship in employing for such service an inexperienced hand, and that he was endamaged $2,500.    These allegations are traversed, and the damages denied.    Libelant was employed by Andrew J. Walker, the stevedore who had the contract for loading the ship, as a common laborer, and was at work with one of the four gangs (22 men) in hold No. 2, storing cotton.    The designated duty of libelant was, with others, "to sling and untie cotton and move it out of the way" when lowered into the hold. There were four holds and four winches being operated.    The captain, in accordance with the custom of the port for ships to furnish the winchmen, had given the contract for operating the winches to

Andrew Brown, a well-known man in the business, about whose competency there is no question. Brown was operating the winch for holds 3 and 4, and had employed Curtis Croom to perform this duty for holds 1 and 2. A sailor had been at the winch at hold 2, where the accident occurred; but on that day, at 7 o'clock in the morning, Curtis Croom was put at this winch, and was there at work when the accident occurred, between 12 and 1 o'clock. The man at the winch is governed by orders given him by the man at the gangway, who stands at or near the hatchway or hold,—in this instance, Frank Isler,—who tells him to hoist, hold, or lower away. The winchman cannot see in the hold. The gang in the hold generally sing when at work; the "boss" leading, and the members of the gang responding in chorus. They were thus singing in hold 2 at the time of the injury. The four winches on deck were being operated, making much noise, and the cargo loaded as expeditiously as possible. There were four gangs at work in No. 2; the gang engaged in slinging, untying, and rolling from under the hatchway cotton, of which Alexander McCullom was a member, being under the immediate orders of B. C. Stokes, whose duty it was to give orders to Frank Isler, the gangwayman, who in turn gave them to the winchman. About noon (between 12 and 1 o'clock), while Alexander McCullom was engaged with his gang moving bales of cotton out of the way, from under the hatchway, a sling of three bales of cotton was lowered into the hold and rolled over on the libelant, after reaching the bottom or the pile of cotton in the hold, jammed him to midship, and broke three ribs,—the eighth, ninth, and tenth. Under the hatchway is a dangerous place to work, and McCullom had been warned to look out for cotton. Isler had given the order to hoist away, and then to lower the sling of cotton into the hold. Complaint had been made to the captain about the way the winch was being operated, but nothing had been said to Curtis Croom, or to Andrew Brown, who engaged him. It does not require an engineer or a mechanic of education and skill to operate a winch. Curtis Croom had had experience as a winchman, and was competent for the work in which he was engaged. There was no negligence on the part of the officers of the ship in letting the contract to Andrew Brown, or the employment of Croom to operate the winch. Libelant's injuries are not permanent, or likely to become so. He was kept from work two months, but within this period was "downtown" once, and on another occasion went to the circus shortly after he was injured. His earnings before he was injured were $4.80 to $5 per week, and since then he has worked at Ft. Caswell, "shoveling sand." What his earnings have been since does not appear. Expenses shown, doctor's bills etc., amount to $80. Including this, and making a liberal allowance for loss of time, difference in earnings, and other incidentals, he has been damaged $300.

In the former decision of this cause the allegations in the libel were taken as true, and the decision made as upon a demurrer ore tenus. Admiralty rule 23, under which libelant is entitled to proceed in rem, provides what must be set forth in the libel; but in

admiralty, as in other causes, allegations alone will not suffice. There must be proof. The libel is held sufficient. What are the facts? The system of admiralty jurisprudence is intended to approach natural justice, and to this end technicalities are frequently disregarded, but the natural justice is for both parties to a cause. It would not be natural or common justice, simply because one party is a fellow being, to whom, in his suffering and need, the sympathy of all goes out, and who we would be happy to aid in his distress, and the other an inanimate object, a foreign ship in one of our ports, representing foreign capital, to arbitrarily take from the one and give to the other. This is too often done or attempted by juries, under the hypnotic influence of eloquent counsel, and from sympathy; but is in many instances condemned by a fair-minded public, and set aside by a just judge. In admiralty there is no jury; the court finds the facts and applies the law. Having the right to proceed in rem, as said by his proctor, libelant must establish to the satisfaction of the court the following conclusions:

"First, the libelant was injured through the careless operation of the winch; second, the winchman was incompetent and inexperienced; third, that the master failed to exercise proper care and diligence in ascertaining the winchman's qualifications; fourth, the master failed to remove him after knowledge of his incompetency came to some officer of the ship; and, fifth, that libelant has been damaged in consequence of his injury."

The allegation is that the immediate and proximate cause of the injury was the gross negligence and incompetency of the man at the winch. The statement in the brief is a radical modification of this allegation, but it is the allegation which must be supported by evidence. True, some witnesses testified that Croom, the man at the winch, was incompetent, while others testified that he was thoroughly competent, for the work in which he was engaged. Here is a direct conflict,—more of opinion than of substantive fact; and the duty of determining the truth, not always pleasant when there is a conflict, devolves on the court. Sifting the kernels of evidence (facts proved) from the chaff of testimony (what witnesses said on the stand), the court has found as a fact that Curtis Croom, the man at the winch, was not grossly negligent or incompetent. He seems, in the noise and confusion of loading a large steamship with cotton (four winches running on deck, and the stevedore's gangs singing in the holds), to have been discharging his duty in the customary manner,—hoisting, holding, and lowering the cotton as ordered by the gangman, as he is called, who was standing on deck at the ship's hold. The winchman says the order to lower this particular sling of cotton was given. Isler says he did not give the order. The cotton was hoisted from the wharf, over the side of the ship, several feet into the air, and lowered into the hold. This occupied some time,—long enough for Isler to have stopped it from being lowered into the hold, if he had not given the orders to hoist and hold until the cotton could swing over the hold. These facts, together with the appearance and deportment of the men on the stand, and other surrounding circumstances, warrant the conclusion that Croom told the truth, and Isler is mistaken. The

court therefore finds that the allegation is not proved, and the immediate and proximate cause of the injury was not the gross negligence and incompetency of the man at the winch. This disposes of the first and second conclusions, which it is admitted libelant must establish to the satisfaction of the court. It is not incumbent on the court to find what was the immediate and proximate cause of the injury, the allegation in the libel not being sustained by evidence. It was not the manner of loading the cotton by any one for whom the ship was responsible, but seems to have been from some cause, after the particular sling of cotton had reached the bales piled in the hold under the hatchway, which it was the special duty of the gang with which libelant was at work to store away, rolling on libelant after the sling was untied. Whose negligence was this? It does not appear in evidence, and is not the proximate cause set up in the libel. The third and fourth conclusions are not established to the satisfaction of the court. The master was a stranger in that port. He made inquiry of probably the agent of one of the largest exporters of cotton in the country, and gave the contract of running the winches to a man in the business, whose competency is not questioned. True, complaint was made to the captain, but it does not clearly appear whether this was before or after the injury. If after, it is of no consequence; and, if before, it does not appear how long before,—whether long enough for him to see the contracting winchman or to make a change. But even in this complaint, testified to in an unsatisfactory and contradictory manner, nothing was said about Croom being incompetent. It is not every accident which occurs in a hold of a ship which amounts to a maritime tort, or entitles one injured thereby to damages. Upon the facts found, the questions involved in the present status of the case being questions of fact mainly, libelant is not entitled to damages. The libel is therefore dismissed. It is so ordered.