## THE DAYLESFORD.[1]

### LE BARON, Jr., *v.* THE DAYLESFORD.

*(District Court, S. D. Alabama. March 14, 1887.)*

1. NEGLIGENCE—PERSONAL INJURIES—LIABILITY OF VESSEL FOR INSECURE APPROACHES—CONTRIBUTORY NEGLIGENCE.

    In cases of maritime tort, courts of admiralty are not bound by rules of the common and civil law governing cases of contributory negligence, and in suits for personal injuries contributory negligence on the part of the libelant is not a bar to his recovery, and will not cause the denial of relief to one whose negligence may have contributed to his injury.[2]

2. SAME.

    Where one has the right to use a ladder as a means of descent from the ship to the wharf, the vessel owes him a duty to see that it is properly secured, and, if personal injuries are caused by the negligence of the ship's crew in this regard. the vessel will be liable therefor.

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

[2] In suits in admiralty for personal injuries, contributory negligence on the part of the libelant is not a bar to his recovery. The admiralty rule, apportioning damages when both parties are at fault, extends to all cases of maritime tort occasioned by concurring negligence. The Max Morris, 28 Fed. Rep. 881, and note.

In Admiralty.
*Hannis Taylor*, for libelant.
*Gregory L. & H. T. Smith*, for respondent.

TOULMIN, J. This action is brought to recover damages for personal injuries caused by the falling of a ladder on which the libelant was descending from the ship to the wharf, at which the ship was lying, in the port of Mobile. The undisputed facts are as follows: The libelant, who was a custom-house officer, and on board of the ship Wylo, along-side of the Daylesford, was called by another custom-house officer, who was engaged in the inspection of the dutiable cargo of the Daylesford, (the greater part of which had already been discharged onto the wharf,) to come to his relief, with the request that he would attend to his duties for him during his temporary but necessary absence. The libelant, in compliance with this request, went on board the Daylesford. The ladder of the vessel, by which the libelant descended, had one end resting on the rail on the after-end of the ship, and the other end on the wharf. Several persons had passed up and down this ladder immediately before its use by the libelant. The ladder fell when the libelant was part way down on it, causing him injuries of a serious character. The ladder had been out for about 10 minutes before the happening of the accident, and had been left during this time unbolted and unlashed. It is conceded that it was customary to lash and bolt it whenever it was put out, and that a failure to so secure it made a descent upon it unsafe.

There is a conflict in the evidence as to who put out the ladder. The evidence on the part of the libelant tends to show that it was done by some of the ship's crew. One witness, a stevedore, testified that he was on the wharf, near the stern of the ship, and there heard the second mate order two sailors of the ship's crew to put out the ladder, and he saw them do it, and leave it unlashed. The evidence on the part of the ship tends to show that two stevedores on board of the ship put it out. One witness, the second officer of the ship, testifies that he was in the after-part of the ship, and in charge there; that he had two seaman with him; that neither of them put out the ladder, but that he saw some shoremen put it out. He says he stood and looked at them, and did not stop them or interfere with them; that the crew were then engaged in attending to the ship. The evidence shows that the master was in the cabin; the first officer forward; the carpenter at the forecastle-head; one seaman at the forward end of the ship; one on the wharf, at the forward end of the vessel, attending to the forward line, and another one of the crew on the wharf, at the after-end of the ship. The two latter were attending to make the ship fast. None of the officers or crew who have testified in the case saw the ladder put out, or knew anything about it until after the accident, except the second officer, who says he saw the shoremen put it out. It does not appear that the two seamen who were aft with the second officer have testified in the case. If they have, they say nothing about seeing the ladder put out, or knowing anything about it. The other members of the crew who have testified say they did not put it out, or see it

done. The master testifies it was contrary to orders for a stranger to put out the ladder, and that it would not be permitted.

The defense in the case is, (1) that the libelant was a stranger to the ship, to whom it owed no duty, and that, even if the ship's crew were negligent in putting out the ladder and in allowing it to remain unlashed, libelant was not in a position to complain about it; (2) that even if the ship and her crew were negligent in putting out the ladder, and allowing it to remain out unlashed, the libelant contributed directly to his injury, by negligently going down the ladder when he could have known its condition by the use of ordinary diligence; and (3) that the ladder was not put out by the ship's crew, but by the stevedores, and that the ship is not liable for any injury resulting therefrom.

While, from the testimony, it is doubtful whether or not libelant was on board the ship in the performance of his duties as a custom-house officer, the evidence leaves no room to contend that he was a trespasser or intruder there. If he was a mere visitor, the ship's crew were under obligations, not only to abstain from doing him any wanton or willful injury, but also not to put out the ladder carelessly, or allow it to be so put out, or to permit it to remain in a dangerous condition at a time when its use might reasonably be expected, and when personal injuries were likely to occur therefrom. 1 Thomp. Neg. 313, 314. Railroad companies are conceded to be liable for injuries caused by defective means of approach to and departure from their depots. 2 Redf. Ry. Cas. 525. The liability of a vessel is of a like character, and is applicable to all who may ordinarily be called upon to trust to the sufficiency of the ways provided for ingress and egress.

Whether or not the libelant was on board of the ship in the performance of his duties as a custom-house officer, or as a mere visitor, he was there by reason of the fact that he was a custom-house officer, whose duties were connected with the ship's cargo, which was being discharged onto the wharf. He was lawfully there. My opinion is therefore that the libelant was in such a position as to hold the ship liable for his injuries if caused by the negligence of the crew.

Was the libelant guilty of contributory negligence? He had nothing to do with putting out the ladder, nor is there any evidence that he saw it put out. The evidence is: He saw the ladder out. He saw several persons pass over it before he got on it. He had no knowledge of the fact that the ladder was unlashed and unbolted, and he knew it was customary to lash or bolt it. He had been boarding vessels for about seven years and was familiar with the practice of securing the ship's ladder. Nothing occurred to call libelant's attention to the condition of the ladder on this occasion. Had he not a right to assume that its condition was such that he might safely walk down it? Did not the fact that the ladder was out from the vessel to the wharf invite the belief that it was put out for persons to pass down on? Did not the fact that it was customary to properly secure the ladder, when it was put out for persons to pass over on, justify the belief that it was secure and safe on this occasion? He did not know it was liable to fall, for he did not know it was un-

lashed. Did he have any reason to suspect it? He knew the universal practice was to lash or bolt it, and he had no reason to anticipate it was not done at this time. Was there, then, any want of ordinary care or attention on his part, or did he act as a man of ordinary prudence would have done under the same circumstances?

It was said in the case of *Thompson* v. *Duncan*, 76 Ala. 338: "If there be danger in standing near an open side door in a car when the train is standing or in motion, it is not an unreasonable presumption that persons of ordinary prudence are aware of it." Thompson, being presumed to be a man of ordinary prudence, was aware that it was dangerous to stand near an open side door in a car when the train is starting, and, knowing that the door was open, he stood by it and was injured. The court held "there was some evidence of contributory negligence."

Let us apply this principle to the case at bar. If there be danger in going down from the ship to the wharf on a ship's ladder, which is not lashed, it is a reasonable presumption that libelant, if he was a person of ordinary prudence, was aware of it; and if he knew that the ladder was unlashed, and then went on it, there would have been evidence of contributory negligence. The contributory negligence would have been in the act of going on the ladder with the knowledge that it was unlashed. My judgment is there was no contributory negligence, or want of ordinary care and attention, in omitting to see if the ladder was lashed. But it has been frequently held that in cases of marine tort courts of admiralty are not bound by the common and civil law rules governing cases of contributory negligence; and, in suits in admiralty for personal injuries, contributory negligence on the part of the libelant is not a bar to his recovery, and will not cause the denial of relief to one whose negligence may have contributed to his injury. *The Max Morris*, 28 Fed. Rep. 881; *The Wanderer*, 20 Fed. Rep. 140; *The Explorer*, Id. 135.

I will further consider the inquiry whether the ship, which is represented by the crew, became charged with any duty towards the libelant in respect to the putting out of the ladder that caused the injury in question. It is conceded that, when the ladder is put out, it is dangerous to life, unless properly secured by lashing or bolting, and it is undisputed that on the occasion in question it was neither lashed nor bolted. From the moment it was put out it was a dangerous structure, placed where men were expected to go on it, and calculated at any moment to inflict great bodily harm. Death or great bodily harm of some kind was the natural and almost inevitable consequence of the condition of the ladder as it was at the time it fell. If the libelant had the right to go on it, the ship owed him a duty to see that it was properly secured. See authorities first above cited, 4 Abb. U. S. Dig. tit. "Negligence." It cannot be denied that the libelant had a right to go on the ladder. Now, was the duty of the ship in regard to it properly performed? In any aspect of the case, as shown by the evidence, it appears to me that there was negligence on the part of the ship's crew. If, as testified to by the stevedore, Beverly, two of the crew, under the orders of the second mate, put out the ladder, and did not lash it, or otherwise properly se-

cure it, and allowed it to remain so for 10 minutes, and until the accident happened, there was gross negligence on the part of the crew; or if, as testified to by the second officer, Roberts, two shoremen, who were on board the vessel, put out the ladder, and he stood and looked at them and did not stop them, or interfere to prevent them, (as it was his duty to do under the rules of the vessel,) or, permitting them to put the ladder out, omitted to see that it was properly secured, or to have it done, then he failed to properly perform his duty, and the ship would be responsible for any injury resulting therefrom. He was negligent. The ship is liable for negligence of the crew. *Sherlock* v. *Alling*, 93 U. S. 108; 1 Kinney, Dig. p. 26, § 82.

I therefore conclude that this is a case where the damage sued for was caused by the negligence of the ship's crew, and I must adjudge the vessel herself liable for such damage, and she is accordingly condemned to pay the same; but, the amount of damage not being shown, a reference must be had to ascertain it.