## THE ANACES.

(Circuit Court of Appeals, Fourth Circuit. March 30, 1899.)

No. 280.

1. MARITIME LIENS FOR TORTS—AMERICAN DOCTRINE.

It is the settled rule in the United States that there is a maritime lien for the injury inflicted by a maritime tort, with but few exceptions, such as that made by admiralty rule 16 in the case of suits for assault and beating.

2. SAME—PERSONAL INJURIES—NEGLIGENCE OF SHIP OFFICERS.

Under the maritime law, as administered in the United States, a stevedore, injured while in the employ of a master stevedore engaged in loading a ship, through the negligent operation of a steam winch belonging to the ship, and under the management of its officers, may maintain a libel in rem against the ship therefor.

3. ADMIRALTY PLEADING—SUFFICIENCY OF LIBEL.

While the burden rests upon a libelant—alleging, in a suit against a ship, that he was injured through the inexperience and incompetence of a man who was operating a steam winch, to which duty he was assigned by the master—to prove that the master failed to exercise proper care and diligence to ascertain the qualifications of the man for the work, or failed to remove him after his incompetency was known to some officer of the ship, an allegation in the libel that the master relieved a competent man from the work, and put in his place an ordinary laborer, who was unacquainted with the operation of the winch, and who was not even connected with the ship, is a sufficient allegation of negligence on the part of the master, where the libel was not excepted to, and was met by an allegation in the answer that the man was competent.

. Appeal from the District Court of the United States for the Eastern District of North Carolina.

This is a libel in rem in admiralty instituted by McCollum, the appellant, against the British steamship Anaces to recover damages for injuries received by the libelant while working, as a stevedore, stowing cotton in the hold of the steamship. The case stated by the libelant is that, while he was at work in the hold, several bales of cotton were suddenly dropped upon him; that he was one of a number of stevedores employed by a master stevedore who had a contract to load the ship; that it was the custom of the port, and one of the terms of the contract for the stevedoring, that the steamship should furnish and operate the winch for hoisting and lowering the cotton, and should provide a man of skill and experience to operate it, so as not to endanger the stevedores working in the hold; that the injury to the libelant was caused by the negligence and incompetency of the man employed by the ship's officers to operate the winch; that the man employed by the master of the ship to operate the winch was an ordinary laborer, entirely inexperienced and unskilled, who was intrusted with a duty requiring experienced judgment in order to avoid injuring the stevedores working in the hold, and that the master in employing an incompetent man, without experience, to operate the winch, was guilty of negligence, and failed in a duty which the owners of the ship owed the libelant; that the injury was caused by the incompetency of the winchman, and through no fault of the libelant. The steamship was arrested, and released upon stipulation. The master appeared as claimant, and filed an answer controverting the allegations of the libel; denying that the winchman was incompetent; alleging that he was a highly-skilled man,

selected by the head stevedore, and that the libelant was injured through his own recklessness in not heeding warnings given him. When the case was called for trial it appears that the respondent made a motion orally to dismiss the libel because improperly brought as a libel in rem. This defense was not made in the answer, and should properly have been made before answer, by exception (Ben. Adm. §§ 466, 468); but the court heard the motion, and dismissed the libel, as stated in the decree, "for the reason that a libel in rem for the causes set forth in the libel will not lie in this court." 87 Fed. 565. From this decree the libelant has appealed.

Iredell Meares (Bellamy & Son, on the brief), for appellant.

George Rountree, for appellee.

Before GOFF, Circuit Judge, and MORRIS and WADDILL, District Judges.

MORRIS, District Judge (after stating the facts as above). The district judge held that the only remedy in admiralty for a personal injury to one lawfully upon the ship, resulting from the negligent failure of the officers of the ship to perform a duty necessary for his safety, is by libel in personam, and that a libel in rem cannot be maintained.

Admiralty rule 23 provides that:

"All libels in instance causes, civil or maritime, shall state the nature of the cause; as, for example, that it is a cause, civil and maritime, of contract, or of tort or damage, or of salvage, or of possession or otherwise, as the case may be; and, if the libel be in rem, that the property is within the district; and, if in personam, the names and occupations and places of residence of the parties."

The only action for tort which by express rule is forbidden to be brought in rem is that mentioned in rule 16, which declares that all suits for assaults and beating on the high seas, or elsewhere within the admiralty and maritime jurisdiction, shall be in personam only. It is admitted that the libel charges a maritime tort, and that the admiralty has jurisdiction (Leathers v. Blessing, 105 U. S. 626), and that many maritime torts give a maritime lien, with a right to proceed in rem to recover the damage sustained; but endeavor has been made to show that maritime torts of the particular kind alleged in this libel do not have that privilege. It is admitted that negligence in navigation, resulting in a collision causing injuries to persons, gives a lien, and that suits for injuries to passengers caused by negligence of the ship's officers can be enforced in rem. And it is hardly denied that personal injuries resulting from defective appliances, or want of proper construction of the ship, give a lien; but it is argued that personal injuries which are caused by negligent misuse of a proper appliance do not give a lien, although they do give an action in admiralty against the owners of the ship. This is an attempt to make a distinction which does not find countenance in the reported decisions of admiralty courts of the United States. In The A. Heaton, 43 Fed. 592, Mr. Justice Gray, sitting in the circuit court, hearing an appeal from the district court of Massachusetts, in a very careful and learned opinion, said:

"In England, indeed, it appears unsettled whether a libel in rem can be maintained in admiralty for a personal injury. But on principle, as observed by a recent English writer, it would seem difficult to deny the justice of the

view that personal injuries inflicted by a ship might confer a maritime lien, or formulate a satisfactory reason why damages occasioned to a man's property should give rise to rights of a higher nature, or be the subject of a more effective remedy, than an injury occasioned under the same circumstances to his person. 4 Law Quar. Rev. 388. In this country it has been established by a series of judgments of the supreme court of the United States that a libel in admiralty may be maintained against the ship for any personal injury for which the owners are liable under the general law, independently of any local statute. Accordingly, passengers have often maintained libels, as well against the ship carrying them as against other ships, for personal injuries caused by negligence for which the owners were responsible. The New World, 16 How. 469; The Washington, 9 Wall. 513; The Juniata, 93 U. S. 337; The City of Panama, 101 U. S. 453, 462. The sixteenth admiralty rule, which directs that 'in all suits for an assault or beating upon the high seas, or elsewhere within the admiralty and maritime jurisdiction, the suit shall be in personam only,' does not affect libels for negligence."

In The John G. Stevens, 170 U. S. 114, 120, 121, 18 Sup. Ct. 544, Mr. Justice Gray, speaking for the supreme court, said:

"The foundation of the rule that collision gives to the party injured a jus in re in the offending ship is the principle of the maritime law that the ship, by whomsoever owned or navigated, is considered as herself the wrongdoer, liable for the tort, and subject to a maritime lien for the damages. The principle, as has been observed by careful text writers on both sides of the Atlantic, has been more clearly established and more fully carried out in this country than in England. Henry, Adm. Jur. & Proc. § 75; Mars. Mar. Coll. (3d Ed.) 93."

And he cites the following passage from The Malek Adhel, 2 How. 210, 234:

"The ship is also, by the general maritime law, held responsible for the torts and misconduct of the master and crew thereof, whether arising from negligence or a willful disregard of duty; as, for example, in cases of collision and other wrongs done upon the high seas, or elsewhere within the admiralty and maritime jurisdiction, upon the general policy of that law, which looks to the instrument itself used as the means of the mischief, as the best and surest pledge for the compensation to the injured party."

He cites also the following from The China, 7 Wall. 58, 68:

"The maritime law as to the position and powers of the master, and the responsibility of the vessel, is not derived from the civil law of master and servant, nor from the common law. It had its source in the commercial usages and jurisprudence of the middle ages. Originally the primary liability was upon the vessel, and that of the owner was not personal, but merely incidental to his ownership, from which he was discharged either by the loss of the vessel, or by abandoning it to the creditors. But, while the law limited the creditor to this part of the owner's property, it gave him a lien or privilege against it in preference to other creditors."

The case of The John G. Stevens is also an authority against the suggestion, made in argument, that the fact that there was no contract in the present case between the libelant and the vessel was a reason for holding that he had no maritime lien for his injuries. On page 124, 170 U. S., and page 549, 18 Sup. Ct., it is said:

"It was argued that the liability of a tug for the loss of her tow was analogous to the liability of a common carrier for the loss of the goods carried. But even an action by a passenger, or by an owner of goods, against a carrier, for neglect to carry and deliver in safety, is an action for breach of a duty imposed by the law, independently of contract or of consideration, and it is therefore founded in tort. Railroad Co. v. Derby, 14 How. 468, 485; Railroad Co. v. Laird, 164 U. S. 393, 17 Sup. Ct. 120. In Norwich Co. v. Wright, 13

Wall. 104, 122, Mr. Justice Bradley, referring to Macl. Shipp. (1st Ed.) 598, laid down these general propositions: 'Liens for reparation for wrong done are superior to any prior liens for money borrowed, wages, pilotage, etc. But they stand on an equality with regard to each other, if they arise from the same cause.' * * * This court more than once has directly affirmed that a suit by the owner of a tow against her tug, to recover for an injury to the tow by negligence on the part of the tug, is a suit ex delicto, and not ex contractu. In The Quickstep, 9 Wall. 665, 670, a libel by the owner of a tow against her tug set forth a contract with the tug, for a stipulated price, to tow directly, and a deviation and an unreasonable delay in its performance, and that the tug negligently backed into the tow and injured her. An objection that the libel could not be maintained because the contract alleged was not proven was overruled by this court. Mr. Justice Davis, in delivering judgment, said: 'The libel was not filed to recover damages for the breach of a contract, as is contended, but to obtain compensation for the commission of a tort. It is true, it asserts a contract of towage; but this is done by way of inducement to the real grievance complained of, which is the wrong suffered by the libelant in the destruction of his boat by the carelessness and mismanagement of the captain of the Quickstep.' "

It would appear, therefore, to be the settled rule in the United States that there is a maritime lien for the injury inflicted by maritime torts, with but few exceptions,—for instance, that made by rule 16, that suits for assault and beating shall be in personam only. In our Reports are many such actions in rem in the district and appellate courts in which the maritime lien has not been questioned, and many of them are suits by stevedores and others not having direct contractual relations with the ship. The Rheola, 19 Fed. 926. This was a libel in rem by a stevedore, one of a number employed by a master stevedore to discharge the ship, who was injured by the breaking of a defective chain furnished by the ship. On appeal to the circuit court, Judge Wallace said:

"As the libelant was not directly employed by the master, and could only look to the master stevedore for his pay, there was no privity of contract between him and the shipowners. Nor did the relation of master and servant, in its technical sense, exist between the libelant and the shipowner. But it is conceived that this does not in the least affect the obligation of the master not to be negligent towards the libelant, or the degree of care which it was incumbent upon him to exercise. The libelant was performing a service in which the shipowners had an interest, and which they contemplated would be performed by the use of the appliances which they agreed to provide. They were under the same obligation to him not to expose him to unnecessary danger that they were to the master stevedore, his employer. This was no express obligation on their part, to either, to provide safe and suitable appliances; but they were under an implied duty to each, and the measure of duty towards each was the same."

Steel v. McNeil, 60 Fed. 105, in the circuit court of appeals for the Fifth circuit, was a libel in rem by one of a number of stevedores, not in the immediate pay of the ship, who was injured by a block which had been negligently rigged with an insufficient shackle bolt by the ship's crew. The libel was maintained.

The Panama, 101 U. S. 453–462, was an action in rem by a passenger who fell into a hatchway negligently left open by some of the crew of the ship. The court said:

"Injuries of the kind alleged give the party a claim for compensation, and the cause of action may be prosecuted by a libel in rem against the ship; and the rule is universal that, if the libel is sustained, the decree may be enforced

in rem, as in other cases where a maritime lien arises. These principles are so well known, and so universally acknowledged, that argument in their support is unnecessary."

The Elton, 83 Fed. 519, was a case heard in this court on appeal from the district of South Carolina. The libel was in rem for injuries to a stevedore resulting from unsafe appliances furnished by the ship, and the decree against the ship was affirmed.

Among other cases, the following may be cited in which libels in rem have been maintained for personal injuries,—many of them by stevedores and others not directly employed by the ship: The Kate Cann, 2 Fed. 241, 8 Fed. 719; The Lord Derby, 17 Fed. 265; The Helios, 12 Fed. 732; The Calista Hawes, 14 Fed. 493; The Max Morris, 24 Fed. 860, affirmed in 137 U. S. 1, 11 Sup. Ct. 29; The Guillermo, 26 Fed. 921; The Daylesford, 30 Fed. 633; The Carolina, Id. 199; Crawford v. The Wells City, 38 Fed. 47; The Protos, 48 Fed. 919; The Nebo, 40 Fed. 31; The Frank and Willie, 45 Fed. 495; The William Branfoot, 48 Fed. 914, affirmed in this court, 3 C. C. A. 155, 52 Fed. 390; The Manhanset, 53 Fed. 843; The France, Id.; The Para, 56 Fed. 241; The Joseph B. Thomas, 86 Fed. 658; The Saratoga, 87 Fed. 349.

Every consideration of justice and of convenience urges that the maritime lien, if it exists, should be maintained in cases like the present one. The owners of the vessel almost invariably are unknown and inaccessible. To require the libelant to serve process on them is practically to deny him any remedy. Under the statutes of the United States, the owners of all the vessel property, foreign and domestic, are given, to the fullest extent, the privilege of limiting their liability to the value of their interest in the vessel. The injured party cannot touch their property, outside of their interest in the ship, if they claim to limit their liability; and there are strong reasons of justice and convenience why he should have a maritime lien upon that specific property, and why distinctions, not founded in reason, between claims of the same general merit, should not gain a place in a system of jurisprudence which is intended to approach natural justice.

It is urged for the appellee that the case of Currie v. McKnight [1897] App. Cas. 97, in the house of lords, is a persuasive decision, of high authority, to establish the contention that there is no maritime lien in the present case. In Currie v. McKnight the master of the vessel against which the maritime lien was asserted had, in order to release her from a position of peril, wrongfully cut the moorings of another ship, and caused her to drift ashore and receive damage. By the judgment of the house of lords it was declared to be the admiralty law, as established in England since the case of The Bold Buccleugh, 7 Moore, P. C. 267, that when a ship is carelessly navigated, so as to occasion injury to another vessel, the injured vessel has a remedy against the corpus of the offending ship, and that this right arises from the fact that the offending ship is the instrument which causes the damage, and it was stated that in the case in hand it appeared from the findings of fact that the damage was not caused by any movement of the vessel proceeded against, in the course of her navigation, but was occasioned by the act of her crew in removing an obstacle to her

starting on her voyage. As the result of the judgments delivered in the case, the ruling was that, under the English law, to render a ship liable to a maritime lien the ship itself must be the instrument which causes the damage. Whether the reasoning of the judgments delivered in Currie v. McKnight would be held satisfactory in our courts, which have made, not solely the fact that the ship is the direct instrument which causes the damage the test of a maritime lien, but also the fact that the maritime tort has resulted from the negligent failure of those in charge of the ship to observe some duty in the management of the ship which the law imposes upon them in respect to persons lawfully on the ship, it is not now necessary to discuss; for the case alleged in the libel in the present case charges that it was the negligent misuse of the ship's steam winch which caused the libelant's injury. It is, in effect, the same as if the charge was that a part of the ship itself, as a spar or a block, had, by fault of the ship's officers, fallen upon the libelant. It was therefore the ship itself which, through the negligent management of the officers, caused the damage, and this is within the test attempted to be set up in Currie v. McKnight. We think, therefore, that it is plain that the case stated in the libel in the present case entitled the libelant to proceed in rem under the maritime law as administered in our courts.

After ruling upon the point we have just discussed, the district judge considered the sufficiency of the allegations of the libel as to the negligence charged, and ruled that the libel was insufficient, in not charging that the incompetency was known, or could with reasonable care have been known, to the ship's officers. This objection, if relied upon by the respondent, should have been taken before answer, by an exception, so that, if held good, the libelant might, if so advised, have amended. But we are of the opinion that the allegations of the libel are sufficient. The libel alleges the duty of the ship to operate the winch, and that it required an experienced and skillful man to operate it, so as to avoid injuring the stevedores who were in the hold receiving the cotton as it was lowered down; that the cotton which fell on the libelant was dropped upon him in the hold by the negligent operation of the winch; that the master of the ship had taken away an experienced person who had before been operating it, and had substituted an ordinary laborer, entirely inexperienced in handling a winch driven by steam; and that, by reason of the neglect by the master of the ship of the duty to employ a competent winchman, the libelant was injured. It is contended for the appellee that the mere employment of an incompetent winchman would not make the ship liable, unless it was further alleged and proved that the incompetency was known to the master, or might have been known to him. The admiralty courts discourage prolixity and technicalities in pleading. The libel should state the facts necessary to give the court jurisdiction. It should not contain conclusions of law, but a statement of facts, in the form prescribed by admiralty rule 23, expressed with brevity, clearness, and certainty. 1 Conk. Adm. (2d Ed.) 72. The gravamen of this libel is the neglect of duty by the officers of the ship, is not providing a competent winchman. The allegation is that the regular winchman was sent to other duties by the master, and that

in his place he put an ordinary laborer, without experience or skill. It is true that the libelant must sustain the burden of showing that, with reasonable care, the master could have ascertained his incompetency, but that will be a deduction to be drawn from the facts proved.

It seems to have been supposed, and has been urged, that this was a case for the application of the doctrine of fellow servant; but the libelant's case, as stated in his libel, is not affected by that doctrine. Granting that the winchman was a fellow servant with the libelant, still the libelant has a cause of action, if the master of the ship placed, as his fellow servant in charge of steam machinery requiring skill to operate it, a man without skill, if it be shown that the master did not take reasonable precautions to ascertain that the man possessed the requisite skill. If it was a duty really requiring skill and experience, the master could not, without liability, pick up any ordinary laborer, and, without inquiring, put him in charge of the winch, to the injury of his fellow employés. In the case of fellow servants, it is said that the master does not warrant the competency of any of his servants, but that it is his duty to select them with discretion, having regard to their duties, and to exercise ordinary care and prudence in ascertaining their fitness for their employment. In order to recover, the libelant must prove, not only that the winchman was incompetent, but that the master failed to exercise proper care and diligence in ascertaining his qualifications, or failed to remove him after his incompetency had come to the knowledge of some officer of the ship. Railway Co. v. McDaniels, 107 U. S. 454, 458, 2 Sup. Ct. 932. This is the burden of proof which rests upon the libelant, but it would seem that the allegation that the master ordered the experienced man who was at the winch to do other work, and put in his place an ordinary laborer, not connected with the ship, and without experience in operating a winch, sufficiently raised the issue, in a case in which the libel was not excepted to, and in which it was met by the averment in the answer that the winchman was a competent man, of several years' experience in operating winches. The decree appealed from is reversed.