## THE GENERAL DE SONIS.

### (District Court, W. D. Washington, N. D.   April 11, 1910.)

### No. 3,410.

**1. SHIPPING (§ 84*)—MASTER'S LIABILITY FOR INJURY TO THIRD PERSON BY NEGLIGENCE OF SERVANT—SCOPE OF EMPLOYMENT.**

The second mate of a vessel, in volunteering to assist the employés of a stevedore in replacing a hatch cover, which was the duty of the stevedore's men, was not acting as representative of the ship's owner or master, having authority to fasten responsibility on them under the rule of respondeat superior, and they cannot be held liable for an injury to one of the men through the mate's negligence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

**2. SHIPPING (§ 87*)—LIABILITY OF VESSEL FOR TORT—NEGLIGENCE OF MASTER OR CREW.**

By the maritime law a ship in commission and her officers and crew are unified, so far that for maritime torts, whether the ship is the instrument by which an injury is inflicted, or the injury is the consequence of a negligent or mischievous act of her captain or any member of her crew, a maritime lien attaches to the ship, which entitles the injured to recover compensation by a suit in rem.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 340; Dec. Dig. § 87.*]

**3. SHIPPING (§ 84*)—LIABILITY OF VESSEL FOR TORT—NEGLIGENCE OF MATE—CONTRIBUTORY NEGLIGENCE—DIVISION OF DAMAGES.**

Libelant, with other employés of a stevedore, were engaged in replacing a hatch cover on a vessel, when a mate volunteered to assist, and through his negligence and that of libelant the hatch cover was caused to fall with them, and libelant was injured. *Held*, that the ship was liable for the negligence of the mate, and that libelant was entitled to recover half damages.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

**4. NEGLIGENCE (§ 1*)—NATURE AND ELEMENTS—DEGREES.**

The degree of negligence necessary to fasten liability upon a person is that degree which is equivalent to lack of such care and prudence as ordinary men habitually exercise for their own personal safety.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*]

In Admiralty.   Suit by John Neiger against the ship General De Sonis, her owner, Société Nouvelle d'Armement, and her master, R. Cousinet, by a longshoreman, to recover damages for a personal injury suffered while libelant was assisting in covering a hatchway on the ship, caused by the collapsing of the hatch structure.   Decree that the libelant take nothing by his suit in personam, and recover half his damages, with interest, against the ship, with a division of costs.

J. L. Waller and Z. B. Rawson, for libelant.
Bogle, Hardin & Spooner and Ira A. Campbell, for respondents.

HANFORD, District Judge.   The libelant was employed by a firm of stevedores having a contract to discharge the cargo of the ship General De Sonis.   At the end of a day's work the men who were doing the

---

work, as employés of said firm, left the ship without having replaced the covers on one of the hatchways, and by direction of their foreman several of the men, including the libelant, returned to the ship to close the hatchway, and while performing that service the libelant was precipitated through the hatchway into the hold of the ship and badly injured. He prosecutes this suit, in rem and in personam, against her master and owner, to recover damages on the alleged ground that the accident happened as a consequence of faulty construction of the frame and covering of the hatchway and carelessness and misconduct on the part of an officer of the ship in jumping upon one section of the hatch covers to force it into position. The owner's claim and a bond for release of the ship having been filed, the claimant and the master jointly answered an amended libel, contesting any liability.

The facts proved are that the coaming of the hatch is 3 feet 4 inches high above the deck, and made of steel a little more than one-third of an inch in thickness, secured to the deck by angle plates fastened to the steel deck and lugs fastened to the deck beams, and reinforced at the top by a half round steel molding. The strong-backs and fore-and-afters, which with the coaming constitute the framework of the hatch, were also made of thin steel. The covering is timber in sections, and made to fit snugly, so as to completely close the opening. Additional means of strengthening the union of parts is provided, consisting of a rod in two parts, joined together by a turn-buckle reaching across the opening, and through the forward and aft coamings, and through the strong-backs. In use when the hatch is closed with the rod in place, the opposite coamings are drawn tight on the fore-and-afters by screwing the turn-buckle. The evidence proves that at the time of opening the hatch, when the rod was removed, the coamings spread half an inch and released the fore-and-afters, so that they were easily removed. The stevedores opened the hatch, and it was their duty to close it. On the occasion referred to, the libelant and his associates had so nearly completed their task that only two sections of the covering timbers remained to be fitted into their places. These seemed to be wider or longer than the space for them, and the men were about to leave the job unfinished, when the second mate of the ship came to their assistance, and an attempt was made to force the covers into position by elevating the overlapping edges and placing them against each other, so as to secure the advantage of a leverage with pressure forcing them down. The rod and turn-buckle had not been placed. The libelant was standing on the hatch with one foot placed to exert pressure downward on one of the sections when the second mate jumped upon the other section, to force it down, with the unexpected result that all, or a considerable part, of the hatch covering, with both men, fell down into the hold of the ship.

The evidence proves that no part of the structure was broken or bent, and all of it was subsequently used without any alteration or repair, and was serviceable as before the happening. Expert witnesses, who have had years of experience in surveying vessels for owners and underwriters, gave testimony approving the construction of the hatch, and according to their statement the ship throughout was constructed and kept in condition to be entitled to the highest rating as a carrier

and subject for insurance. It would appear from their evidence that such an accident could not possibly have happened, and I find that the evidence in its entirety fails to give an intelligent explanation of the occurrence. The hatch covering did collapse, however, and the accident cannot be explained upon any other theory than that, owing to the springiness of the metal in the absence of the rod and turn-buckle, the strong-backs and fore-and-afters must have been displaced by the jar and concussion caused by the efforts of the libelant and the second mate to force the last two sections into position.

The degree of negligence necessary to fasten liability upon either the ship, her master, or owner is that degree which is equivalent to lack of such care and prudence as ordinary men habitually exercise for their own personal safety. This hatchway having been approved by the builders and insurer of the ship, and having served the purpose for which it was constructed before and after the accident, cannot be regarded as so faulty as to justify condemnation of the ship for unseaworthiness, nor a finding that the owner or captain were guilty of that degree of neglect which amounts to a tort in permitting stevedores to work around it. Competent seamen and stevedores could have covered the hatch without risk of injury to any one. Therefore the accident must be attributed to carelessness or lack of skill on the part of the libelant, his associates, and the second mate of the ship.

The questions as to the right of the libelant to maintain the suit in personam against the owner and master, and as to the liability of the ship, will be separated, and I will first consider the case as if it were a suit in personam only. There is a conflict in the evidence as to whether the second mate acted upon his own initiative in assisting to close the hatch, or whether the libelant called him to assist; but, whatever the fact may be in that respect, the respondents are not personally liable for his error. This is so for the reason that the contracting stevedores were responsible for closing the hatch, their employés were sent to perform that service, and the second mate, in the manual handling of the hatch covers and jumping upon them, was a mere volunteer, assisting the stevedores in the performance of their duties. In doing the stevedores' work, he was not a representative of the ship's owner or master, having authority to fasten responsibility upon them by application of the rule of respondeat superior.

The Supreme Court in the case of Standard Oil Co. v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480, cited by the libelant's proctors, affirmed a judgment for damages in favor of an injured workman against the employer of another workman. The individuals involved were the plaintiff, his employer, a master stevedore, who had a contract for loading a ship, the defendant, a corporation, and a winchman in the general service of the defendant. The operation of loading was managed by the contractor. The motive power was a steam winch, owned by the defendant and operated by the winchman, whose negligence caused the accident. The action was founded upon the rule of respondeat superior, and the only question presented was "whether the winchman was, at the time the injuries were received, the servant of the defendant or of the stevedore." The controlling fact in the case was that the winchman was at the time "engaged in the work of the

defendant, under its rightful control." The opinion of the court discusses general principles and affirms that:

"The master's responsibility cannot be extended beyond the limits of the master's work. If the servant is doing his own work, or that of some other, the master is not answerable for his negligence in the performance of it."

In reaching the conclusion that the winchman was not a fellow servant of the injured longshoreman, the opinion states that:

"In order to relieve the defendant from the results of the legal relation of master and servant, it must appear that that relation, for the time, had been suspended, and a new like relation between the winchman and the stevedore had been created."

The opinion is instructive, but differences in the facts make it inapplicable to this case as an authority in point. The perplexing question in this case would not exist if the second mate had merely, in the exercise of his authority, exacted performance of the duty of the stevedore's men to close the hatchway properly, without himself participating in the doing of their work; for, if the accident had resulted solely from their lack of skill, it could not be justly attributed to any fault of the respondents. There is a rule well established by adjudged cases that a vice principal, who causes an injury to a workman in the voluntary performance of a workman's act, is regarded in law as a fellow servant of the injured workman, and no liability attaches to the common employer for the injury so caused. The Miami, 93 Fed. 218, 35 C. C. A. 281. And it is the opinion of the court that by analogy the relation of master and servant is suspended when a representative of one employer volunteers to assist the servants of a different master in the performance of manual labor. Guided by that rule, the test applied by the Supreme Court in the case of Standard Oil Co. v. Anderson, applied to this case, leads to the conclusion that the respondents are not liable to the libelant, although the relation of master and servant between the second mate of the ship and the contracting stevedores did not exist.

### Liability of the Ship.

The other branch of the case requires application of the maritime law, instead of common-law rules. The court holds that the act of the second mate in jumping on the hatch cover was a maritime tort, because it was a wrongful act by an officer of the ship, and it caused an injury on board the ship to a man at the time engaged in the performance of a service to the ship. By the maritime law a ship, in commission, and her officers and crew, are unified, so far that for maritime torts, whether the ship is the instrument by which an injury is inflicted, or the injury is the consequence of a negligent or mischievous act of her captain, or any member of her crew, a maritime lien attaches to the ship, which entitles the injured to recover compensation by a suit in rem. 19 Am. & Eng. Enc. of Law (2d Ed.) 1117; 1 Enc. L. & P. 1245, 1285; The Anaces, 93 Fed. 240, 34 C. C. A. 558; The Homer, 99 Fed. 795, s. c. 109 Fed. 572, 48 C. C. A. 465; The Troop, 118 Fed. 769, s. c. 128 Fed. 856, 63 C. C. A. 584.

The libelant's injuries were painful and serious, and the pecuniary loss, including deprivation of earnings while he was incapacitated for

work, amounts to a considerable sum. It is the opinion of the court that $3,000 would be reasonable compensation if the libelant's own carelessness in standing upon the hatch had not been a contributing cause of the accident. In view of all the circumstances, the case is one for a division of the damages. The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29, 34 L. Ed. 586; The City of Seattle, 150 Fed. 537, 80 C. C. A. 279, 10 L. R. A. (N. S.) 969.

The court directs the entry of a decree that the libelant take nothing by his suit in personam, and awarding damages in the sum of $1,500, with interest from the date of the commencement of the suit at 6 per cent. per annum, recoverable from the obligees on the bond for the release of the ship, and that the costs be equally divided between the libelant and claimant.